**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **JASON BOICE, *et al.*,** | * | |
| | * | |
| **Plaintiffs,** | * | |
| | * | |
| **vs.** | * | **CIVIL ACTION NO. 26-00373-KD-B** |
| | * | |
| **GREAT LAKES INSURANCE SE,** | * | |
| | * | |
| **Defendant.** | * | |

**REPORT AND RECOMMENDATION**

This action is before the Court on Defendant Great Lakes Insurance SE's motion to dismiss Count II of Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 4). The motion has been referred to the undersigned Magistrate Judge for consideration and recommendation pursuant to 28 U.S.C. § 636(b)(1) and S.D. Ala. GenLR 72(a)(2)(S). For the reasons stated below, the undersigned recommends that the motion be **GRANTED.**

## I. BACKGROUND

On August 4, 2026, Plaintiffs Jason Boice and Jasmine George (collectively, "Plaintiffs") commenced this action in state court by filing a complaint and an amended complaint against Defendant Great Lakes Insurance SE ("Great Lakes").[1] (Doc. 1-2 at 8-12, 16-20).

---

[1] Plaintiffs' complaint also names fictitious defendants, "a practice which is allowed under the [Alabama] state procedural rules" but "is not generally recognized under the Federal Rules of

In their complaint,[2] Plaintiffs allege that on or about April 25, 2024, Great Lakes issued an insurance policy to Plaintiffs insuring their property located in Chickasaw, Alabama.[3] (Id. at 17). Among other things, the policy provided dwelling coverage limits of $100,000. (Id.). The application for coverage submitted by Plaintiffs' agent, and the policy declarations page, listed the occupancy of the dwelling as "TENANT." (Id.). The policy contained a "Full Time Occupied" endorsement, which provided that the insurer would not cover loss if the dwelling was vacant or unoccupied at the time of the policy's inception and remained so at the time of loss. (Id.). At the time of the policy's inception, Plaintiffs were actively preparing the property for rental occupancy, and Plaintiffs had tenants lined up to rent the property within two weeks of their purchase of the property. (Id.).

On or about May 2, 2024, Southern Insurance Underwriters, Inc. ("SIU"), an entity Plaintiffs believe was acting on behalf of or in connection with the underwriting or administration of the policy for Great Lakes, issued a letter to Plaintiffs identifying

---

Civil Procedure." Collins v. Fingerhut Companies, Inc., 117 F. Supp. 2d 1283, 1283 n.1 (S.D. Ala. 2000).

[2] For the sake of convenience, and because it is titled as such, the Court will refer to the operative amended complaint (Doc. 1-2 at 16-20) as the complaint.

[3] For purposes of resolving the instant motion to dismiss, the Court accepts as true the facts alleged in Plaintiffs' complaint.

certain issues that needed to be corrected to avoid cancellation of the policy. (Id.). The repairs required by SIU included trimming trees branches overhanging the roof, replacing missing rails at the front stoop, and installing quick release mechanisms on all window security bars. (Id.). These repair requirements caused a delay in getting the property rented while Plaintiffs worked to meet SIU's demands. (Id.).

On or about June 22, 2024, during the policy period, the property sustained damage due to a fire, which was a covered peril under the policy. (Id.). Plaintiffs timely notified Great Lakes of the loss and otherwise complied with all conditions precedent to coverage under the policy. (Id.). Plaintiffs submitted a claim to Great Lakes, administered by PLSCLAIMS, for the fire damage to the insured property. (Id.). "By letters dated July 10, 2024, and August 6, 2024, and reiterated by letter dated September 3, 2024, PLSCLAIMS, on behalf of and at the direction of Great Lakes, denied Plaintiffs' claim." (Id.). The reasons given for the denial were an alleged violation of the policy's "Full Time Occupied" endorsement because the property was not occupied by tenants at the time of loss, and an alleged material misrepresentation in the application stating that the dwelling was tenant-occupied. (Id.).

Plaintiffs' insurance agent informed PLSCLAIMS that SIU's inspection requirements had caused a delay in getting the property

rented and were the reason the home was still vacant. (Id.). However, PLSCLAIMS, on behalf of Great Lakes, posited that the repairs mandated by SIU "would [not] prevent or prohibit a tenant from occupying the dwelling." (Id.). Plaintiffs contend that this assertion "fails to recognize the practical impact of such required repairs on the habitability and rentability of the Premises, especially in light of Plaintiffs' efforts to secure tenants, including through programs like the Mobile Housing Authority's Housing Choice Voucher Program, which has its own inspection standards that must be met before a tenant can move in, as communicated by Mr. Boice to PLSCLAIMS." (Id.). Plaintiffs also deny any intentional concealment, misrepresentation of material fact, fraudulent conduct, or false statements in their policy application relating to whether the dwelling was tenant-occupied. (Id. at 17-18).

In Count I, Plaintiffs assert a claim for breach of contract against Great Lakes. (Id. at 18). Plaintiffs allege that Great Lakes breached its contractual obligations under the policy by wrongfully denying coverage for the covered fire loss; failing and refusing to pay Plaintiffs for the covered damages to the property resulting from the fire; unreasonably interpreting and applying the "Full Time Occupied" endorsement and vacancy provisions of the policy given that the repair requirements it imposed as a condition of maintaining coverage necessarily delayed tenant occupancy of

the property; and wrongfully asserting that Plaintiffs made material misrepresentations in their application in order to void coverage. (Id.).

In Count II, Plaintiffs assert a bad faith claim against Great Lakes for intentionally refusing to pay their valid insurance claim without legitimate or arguable reason for doing so. (Id. at 18-19). Plaintiffs reiterate that the denial of their claim based on the "Full Time Occupied" endorsement or vacancy was improper because any vacancy or lack of tenant occupancy was a direct result of the repair requirements imposed by SIU on behalf of Great Lakes as a condition of maintaining the policy. (Id. at 18). Plaintiffs further allege that Great Lakes failed to properly investigate or consider the information they provided regarding the reasons for the property's vacancy, including the impact of SIU's repair mandates and the efforts to prepare the property for tenants. (Id. at 18-19). And Plaintiffs contend that the denial based on alleged material misrepresentation in the application was pretextual and meritless, as Plaintiffs had no intent to deceive, and Great Lakes, through SIU, was aware of the condition of the property as being prepared for rental. (Id. at 19).

Great Lakes removed this action to federal court on the basis of diversity jurisdiction. (Doc. 1). On September 23, 2026, Great Lakes filed an answer to Plaintiffs' complaint, along with the instant motion to dismiss Count II of the complaint. (Docs. 4,

5). The Court ordered Plaintiffs to file a response to the motion to dismiss on or before October 8, 2026. (Doc. 7). However, Plaintiffs, who are represented by counsel, failed to file a response as ordered. Accordingly, the motion to dismiss is ripe for resolution.

**II. STANDARD OF REVIEW**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. This necessarily requires that a plaintiff include factual allegations that plausibly support each essential element of his claim. Randall v. Scott, 610 F.3d 701, 708 n.2 (11th Cir. 2010).

When evaluating a motion to dismiss under Rule 12(b)(6), a court "must accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." Almanza v. United Airlines, Inc., 851 F.3d 1060, 1066

(11th Cir. 2017). That said, "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011). A complaint does not need detailed factual allegations, but it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. A court reviewing a motion to dismiss must typically limit its consideration to the complaint and any exhibits attached thereto. Grossman v. NationsBank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (per curiam).

When a successful affirmative defense appears on the face of a complaint, dismissal for failure to state a claim is warranted. Fortner v. Thomas, 983 F.2d 1024, 1028 (11th Cir. 1993). "'A statute of limitations bar is an affirmative defense,' and a plaintiff is 'not required to negate an affirmative defense in [its] complaint.'" Wainberg v. Mellichamp, 93 F.4th 1221, 1224 (11th Cir. 2024) (per curiam) (quoting La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004)). Therefore, "dismissal on statute-of-limitations grounds is proper only where it is 'apparent from the face of the complaint that the claim is time-barred.'" Id. (quoting La Grasta, 358 F.3d at 845).

## III. DISCUSSION

Great Lakes contends that Count II is due to be dismissed because the complaint's own allegations establish that Plaintiffs'

bad faith claim is barred by the applicable two-year statute of limitations. (Doc. 4 at 1). As noted above, Plaintiffs have failed to respond to this argument.

To state a claim for bad faith in the insurance context under Alabama law, a plaintiff must allege:

> (1) an insurance contract between the parties and a breach thereof by defendant; (2) an intentional refusal to pay the insured's claim; (3) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason); (4) the insurer's actual knowledge of the absence of any legitimate or arguable reason; and (5) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.

Old House Specialists, LLC v. Guarantee Ins. of N. Am. USA, 541 F. Supp. 3d 1325, 1328 (M.D. Ala. 2021) (quoting Nat'l Sec. Fire & Cas. Co. v. Bowen, 417 So. 2d 179, 183 (Ala. 1982)).

A bad faith claim under Alabama law is subject to a two-year statute of limitations. ALFA Mut. Ins. Co. v. Smith, 540 So. 2d 691, 692 (Ala. 1988); see Ala. Code § 6-2-38(l). A "cause of action for bad faith refusal to honor insurance benefits accrues upon the event of the bad faith refusal, or upon the knowledge of facts which would reasonably lead the insured to a discovery of the bad faith refusal." Safeco Ins. Co. of Am. v. Sims, 435 So. 2d 1219, 1222 (Ala. 1983). "A letter denying insurance coverage should be sufficient to 'put a reasonable mind on notice of the

*possible existence* of fraud' and, thus, to trigger the running of statute of limitations for a bad faith refusal claim." Toffel v. Nationwide Mut. Ins. Co., 2016 U.S. Dist. LEXIS 107331, at *18-19, 2016 WL 4271837, at *7 (N.D. Ala. Aug. 15, 2016) (emphasis in original) (citing Farmers & Merchants Bank v. Home Ins. Co., 514 So. 2d 825, 831-32 (Ala. 1987)).

Great Lakes argues:

> Plaintiffs allege that Great Lakes denied their insurance claim by letter dated July 10, 2024. (Complaint ¶ 18.) Plaintiffs further allege that the denial was wrongful and that Great Lakes lacked a reasonably legitimate or arguable basis for refusing payment. (Complaint ¶¶ 30-32.) . . .
>
> Accepting the Complaint's allegations as true for the purposes of this Motion to Dismiss only, Plaintiffs necessarily knew on July 10, 2024 that Great Lakes had denied the claim and possessed the facts they now contend demonstrate bad faith. [T]hose alleged facts were sufficient to place a reasonable person on notice of the possible existence of a bad-faith claim and therefore triggered the running of the statute of limitations.
>
> Although Plaintiffs allege that Great Lakes later reiterated its position in correspondence dated August 6, 2024, and September 3, 2024, those allegations do not alter the analysis. [A]ccrual turns on when the insured knew facts that would put a reasonable person on notice of the possible existence of the claim. By Plaintiffs' own allegations, that notice existed no later than July 10, 2024.
>
> Because Plaintiffs did not commence this action until August 4, 2026, more than two years after July 10, 2024, Count II is barred by the applicable statute of limitations. Accordingly, Count II fails to state a claim upon which relief can be granted and should be dismissed with prejudice.

(Doc. 4 at 3-4).

The Court agrees with Great Lakes that Plaintiffs' bad faith claim in Count II is barred by the two-year statute of limitations. The complaint states that in a letter dated July 10, 2024, PLSCLAIMS denied Plaintiffs' claim for insurance coverage on behalf of and at the direction of Great Lakes. (Doc. 1-2 at 17). The complaint alleges that the stated reasons for the denial were an alleged violation of the policy's "Full Time Occupied" endorsement and an alleged material misrepresentation in the application stating that the dwelling was tenant-occupied. (Id.). And the complaint asserts that the denial of Plaintiffs' claim based on the alleged violation of the occupancy endorsement and the alleged misrepresentation was improper, unreasonable, pretextual, and lacking any legitimate or arguable basis. (Id. at 18-19). Thus, the July 10, 2024 letter denying coverage for allegedly illegitimate and pretextual reasons was, at minimum, sufficient to place Plaintiffs on notice of Great Lakes' possible bad faith. See Toffel, 2016 U.S. Dist. LEXIS 107331, at *19, 2016 WL 4271837, at *7; Winkles v. Union Banker's Ins. Co., 2012 U.S. Dist. LEXIS 203044, at *6-7, 2012 WL 13019473, at *3 (N.D. Ala. Feb. 3, 2012); Harbar Constr. Co. v. Nationwide Mut. Ins. Co., 2011 U.S. Dist. LEXIS 174880, at *11, 2011 WL 13285767, at *5 (N.D. Ala. May 27, 2011) ("[T]he time begins to run when the plaintiff 'receives documents that would put [it] on notice,' and the issue is not a jury question, but a question of law, where the plaintiff

'actually knew' of the denial.") (citation omitted). Tellingly, Plaintiffs do not assert that the July 10, 2024 letter was not sufficient to place them on notice of Great Lakes' denial and possible bad faith more than two years before filing their complaint. In fact, Plaintiffs make no argument for a later accrual date that could render their bad faith claim timely.

Therefore, the statute of limitations for Plaintiffs' bad faith claim began to run when Plaintiffs received the July 10, 2024 denial of coverage letter and expired two years later. See Toffel, 2016 U.S. Dist. LEXIS 107331, at *19, 2016 WL 4271837, at *7; Hood v. Liberty Ins. Corp., 2013 WL 3894958, at *2 (S.D. Ala. July 29, 2013). Plaintiffs did not file this action until August 4, 2026, more than two years after receiving the initial letter denying coverage for allegedly illegitimate and pretextual reasons. Accordingly, Plaintiffs' bad faith claim in Count II is barred by the two-year statute of limitations and is due to be dismissed with prejudice.

## IV. CONCLUSION

For the reasons set forth above, the undersigned recommends that Defendant Great Lakes Insurance SE's motion to dismiss Count II of Plaintiffs' complaint (Doc. 4) be **GRANTED**, and that Plaintiffs' bad faith claim in Count II of the complaint be **DISMISSED with prejudice.**

**NOTICE OF RIGHT TO FILE OBJECTIONS**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **23rd** day of **October, 2026.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**